IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>DEBORAH F. CHANTARUMPORN,<br><br>    Debtor. | Chapter 11<br>Case No. 3:16-bk-02034<br>Judge Harrison |

## BANK OF NEW YORK MELLON'S OBJECTION TO CONFIRMATION OF THE DEBTOR'S AMENDED PLAN

COMES NOW, The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-HYB5, Mortgage Pass-Through Certificates, Series 2004-HYB5 ("BNY Mellon"), and files this Objection to Confirmation of the Debtor's Amended Plan of Reorganization (the "Amended Plan") [Doc. 82], respectfully showing this Honorable Court as follows:

## STATEMENT OF FACTS

This is the Debtor's second successive Chapter 11 case. *See In re Chantarumporn*, No. 3:08-bk-05504 (Bankr. M.D. Tenn.) ("*Chantarumporn I*"). In her first case, BNY Mellon's predecessor in interest, Countrywide Home Loans, Inc., filed a secured claim in the amount of $211,451.39, related to the property at 1016 Farmhouse Road, Lascassas TN 37805 (the "Property"). *See Chantarumporn I*, [Claim No. 12]. In her confirmed plan from that case, the Debtor crammed down this claim to $160,000.00, and provided for the following treatment:

> The property located at 1016 Farm House Road, Murfreesboro, TN shall be paid over the term of 30 years, on $160,000.00, plus interest of 5.25 percent a monthly payment of $880.00, beginning 30 days following the effective date of the plan and continuing monthly until the value is paid in full.

*Id.* at [Doc. 178].

1

The *Chantarumporn I* Plan was confirmed on April 14, 2009, without amendment to BNY Mellon/Countrywide's treatment. *See id.* at [Doc. 263]. Shortly thereafter, on May 26, 2009, the Debtor moved for entry of a final decree, asserting that there had been substantial consummation of the confirmed plan. *Id.* at [Doc. 275]. This Court granted the Motion, and the case was initially closed on July 23, 2009. *Id.* at [Doc. 277].

Nearly three years later, on March 20, 2012, the Debtor filed a Motion to Reopen, *id.* at [Doc. 281], and on the same date, an Amended Motion to Reopen, *id.* at [Doc. 283]. In the Amended Motion to Reopen, the Debtor asserted that:

> The purpose of the reopening of the case is to permit consideration of the Debtor's application to determine the Extent of Plan Provisions, to Implement and Consummate Plan Provisions, to Provide an Accounting of all charges made by the Respondents and all Payments made by the Debtor, and to Assess Damages for Violation of the Confirmation Order. A copy of the Application is attached hereto as Exhibit A.

*Id.*

The Application that was attached as Exhibit A alleged that many secured creditors, including Countrywide, had failed to implement the terms of the confirmed plan. *Id.* at [Doc. 283-1]. However, the allegations against Countrywide related only to 702 Yorktown Court, and not the Property that is the subject of BNY Mellon's claim. *Id.* This Court granted the Amended Motion to Reopen on April 27, 2012. *Id.* at [Doc. 285]. However, the Debtor never filed the Application attached to the Motion as Exhibit A, nor did she ever file anything else. Months later, on December 6, 2012, this Court closed the case again. *Id.* at [Doc. 290].

Instead of pursuing claims against these creditors for breach of contract or contempt of the confirmation order, as she should have, the Debtor filed another Chapter 11 case – the instant case ("*Chantarumporn II*") – on March 23, 2016. In her approved Amended Disclosure Statement, [Doc. 83], the Debtor provided the following reasons for the successive filing:

2

**5.2 Causes of the Chapter 11 Filing.** The Debtor's filing was occasioned by the failure of a number of creditors to abide by the terms of the Debtor's previously Confirmed Chapter 11 Plan. That Confirmation Order was entered April 14, 2009. Secured debt treated under the previous plan, sales of the mortgages and/or servicing agencies became involved. Apparently, in the instances of sale of the mortgage, the new lender was not advised of the previous Chapter 11 case, nor of the confirmation order. The new lender in a number of instances refused to take the Plan payments or returned the monthly payments. Repeated efforts were made by the Debtor to provide confirmation documents in an attempt to resolve the problem. In more than one instance the Debtor was advised not to make further payments.

Despite the fact that the Debtor has never alleged that BNY Mellon's claim was not adjusted per the terms of the confirmed plan in *Chantarumporn I*, the Proof of Claim filed by BNY Mellon in the instant case shows that the Debtor never made any payments to it. On the petition date, the principal balance on its claim was still $160,000.00. With interest and other fees and costs, the claim totaled $247,744.70. *See Chantarumporn II* at [Claim 2]. However, the Debtor does not want to take responsibility for years of missed payments from *Chantarumporn I*, and the Debtor is again seeking to cramdown BNY Mellon's claim to $160,000.00:

> 8.4 **Class 4 - The Bank Of New York Mellon FKA The Bank Of New York, As Trustee ("N. Y. Mellon").** N. Y. Mellon has filed a claim in the amount of $244,744.70, for the property located at 1016 Farmhouse Road, Lascassas, TN. Debtor believes the current market value of the property is $160,000.00, as substantial repairs are required to the property. N. Y. Mellon shall be paid the sum of $160,000.00, plus five percent (5%) interest over the term of 25 years, payable in the amount of $935.34 per month.

*Chantarumporn II* at [Doc. 82], p. 17.

The Debtor has provided no support for the property value of $160,000.00. Moreover, the Plan does not provide for payment of the unsecured portion to BNY Mellon, and instead proposes to pay only three unsecured claims: Baptist Hospital, Dr. Michael Swan, and St. Thomas Hospital. *Id.* at p. 20. The Plan constitutes an impermissible modification of the confirmed Plan in *Chantarumporn I*, violates the absolute priority rule, improperly crams down

3

BNY Mellon's claim to a value unsupported by any evidence, and violates the Best Interest of Creditors Test. This Court should deny confirmation of the Amended Plan.

## ARGUMENT AND CITATION OF AUTHORITY

**A. The Plan is Not Proposed in Good Faith and Constitutes an Impermissible Modification of the Confirmed Plan in *Chantarumporn I***

The Debtor has already had one plan confirmed in *Chantarumporn I*, and she is bound by the terms of that plan. "Courts do not permit a debtor to avoid the binding effect of 11 U.S.C. § 1141 by filing a second Chapter 11 petition to achieve a modification that would be prohibited under § 1127." *In re Tillotson*, 266 B.R. 565, 568 (Bankr. W.D.N.Y. 2001). Under § 1127, modification of a substantially consummated plan, such as the one in *Chantarumporn I*, is prohibited. "Although § 1127(b) prohibits modification of a substantially consummated plan, several courts have held that serial chapter 11 filings are not *per se* impermissible, and that a second plan may modify the first plan where there has been an unforeseeable or unanticipated change in circumstances." *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 46 (B.A.P. 9th Cir. 2012) (collecting cases). As the Ninth Circuit B.A.P. noted in *Caviata*, "the unforeseeable or unanticipated change in circumstances must have affected the debtor's ability to perform under its confirmed plan." *Id.* (collecting cases). "Cases in which a chapter 11 debtor has been successful in showing unforeseen changed circumstances to warrant a second chapter 11 filing are clearly the exception rather than the rule." *Id.*

Additionally, the Southern District of Georgia has established a five factor test to use "when evaluating a subsequent Chapter 11 filing." *Matter of Bouy, Hall & Howard and Associates*, 208 B.R. 737, 744 (Bankr. S.D. Ga. 1995). Those factors are:

1) The length of time between the two cases;
2) The foreseeability and substantiality of events which ultimately caused the subsequent filing;

4

3) Whether the new plan contemplates liquidation or reorganization;
4) The degree to which creditors consent to the filing of the subsequent reorganization;
5) The extent to which an objecting creditor's rights were modified in the initial reorganization and its treatment in the subsequent case;

*Id.*

The Court in *Bouy* also impressed upon the good faith requirement that must be shown in a successive Chapter 11 case.

> A debtor should not be permitted to routinely file a successive Chapter 11 reorganization where it has defaulted on a confirmed, substantially consummated plan of reorganization, because such an effort would, in effect, constitute an impermissible attempt to modify a substantially consummated plan. However, when the facts if the second case are significantly distinguishable from the first so as not to offend traditional notions of *res judicata,* a permissible exception exists. Although the standard for permitting the second Chapter 11 is "good faith", since good faith is a requirement of every Chapter 11 case under 11 U.S.C. Section 1129(a)(3), merely to utilize the ordinary "good faith" test to assess a serial-filed case is insufficient. To require no greater scrutiny of the subsequent case is to completely ignore Sections 1127 and 1141. Rather it is necessary for the debtor to demonstrate, after consideration of the first filing and the circumstances surrounding default, that the second petition is not an attempt to thwart the initial bankruptcy proceedings. *In re Elmwood Development Company,* 964 F.2d 508, 511.

*Id.* at 743.

Here, the Debtor has failed to show good faith, that there were unforeseen changed circumstances, or that the five *Bouy* factors weigh in her favor. The Debtor claims to have defaulted because certain creditors (not BNY Mellon, according to the attachment to her Motion to Reopen in *Chantarumporn I*) did not implement the terms of the first confirmed plan. This is not an unforeseen circumstance that would cause the Debtor to default on the plan terms, but instead represents a breach of contract or contempt of the confirmation order by noncomplying creditors. The Debtor has ample avenues to force the issue to be resolved by this Court in *Chantarumporn I*, and in fact, started the process to do so, filing a Motion to Reopen over five years ago, but never pursuing any relief once the case was reopened. Rather, she waited over

5

another three years to file the instant case, all while BNY Mellon was relying on the terms of the confirmed plan in *Chantarumporn I* and not getting paid on those terms.

Moreover, the Debtor is attempting to again modify the rights of BNY Mellon. After cramming its claim down from $211,451.39 to $160,000.00 with interest at 5.25% in *Chantarumporn I*, she is now seeking an even more striking modification, from $247,744.70 to $160,000.00, a quarter point interest rate reduction to 5%, an extension of the maturity date from 2039 to 2042, and to completely absolve herself of the $30,473.60 that has been extended on her behalf to pay property taxes and insurance on the property. Additionally, the Debtor has completely ignored the requirement of 11 U.S.C. § 506(a)(1) that the balance of the claim be treated as unsecured. Instead, the balance of the claim simply disappeared into thin air as if it never existed. The proposed Amended Plan is a gross abuse of the bankruptcy process, and the Debtor cannot claim to have proposed it in good faith. BNY Mellon must be paid under the terms of the binding, confirmed plan from *Chantarumporn I* without any modification whatsoever. Confirmation should be denied.

**B.      The Amended Plan Violates the Absolute Priority Rule**

In addition to the Debtor failing to make the requisite showing to allow for a second Chapter 11 plan, the Amended Plan proposed here does not comply with the absolute priority rule. "In order for a plan to be 'fair and equitable' for purposes of § 1129(b), it must satisfy the absolute-priority rule." *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 737 (6th Cir. 2014) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988)). "As codified, the rule provides that every unsecured creditor must be paid in full before the debtor can retain 'any property' under a plan." *Id.* (citing 11 U.S.C. § 1129(b)(2)(B)(ii).

6

Here, if the absolute priority objection brings two major points into focus. First, and foremost, assuming *arguendo* that the Property's value is actually $160,000.00, the Amended Plan fails to comply with the requirements of 11 U.S.C. § 506(a)(1) that an undersecured creditor be given an unsecured claim for the unsecured portion of its debt. *See U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 239 (1989). The Debtor here has only provided for payment to three unsecured creditors: Baptist Hospital, Dr. Michael Swan, and St. Thomas Hospital. *See* [Doc. 82] at p. 20. However, BNY Mellon must be given an unsecured claim for $87,744.70 (assuming the proposed valuation is sustained).

With BNY Mellon included in the class of unsecured creditors (and even without it), the Amended Plan violates the absolute priority rule. The Debtor is retaining all of her property and selling nothing, including the equitable interests she owns in the Property secured by BNY Mellon's claim and all other real property identified in the Amended Plan. Meanwhile, the entire pool of unsecured creditors, which totals $94,720.99, is receiving just $6,000.00. Even without BNY Mellon's claim included, the Debtor is paying only $6,000.00 of a total of $6,976.29. It is clearly unfair to allow the Debtor to retain property under the Amended Plan while, without justification, failing to pay a meager amount of $976.29 to pay unsecured creditors (excluding BNY Mellon) in full. The Amended Plan violates the absolute priority rule and confirmation must be denied.

C. **The Debtor Has Failed to Satisfy Her Burden of Proof Regarding the Value of the Property**

Assuming *arguendo* that the Debtor can overcome all of the other issues raised herein, she still must satisfy this Court that the value of the Property is $160,000.00. When a debtor proposes to value property through plan confirmation proceedings for purposes of cramming down or stripping off a lien, the debtor bears the burden of proving that the value is less than the

7

secured claim amount. *In re Williams*, 480 B.R. 813, 814-15 (Bankr. E.D. Tenn. 2012); *see also Johnston v. Suntrust Bank (In re Johnston)*, No. 12-05066, 2013 WL 1844751, at *5 (Bankr. W.D. Va. April 12, 2013).

Here, the Debtor has provided no evidence or other indication, either in her Amended Disclosure Statement or Amended Plan, to satisfy her burden that the Property is worth only $160,000.00. The Debtor cannot have her Amended Plan confirmed without providing such evidence, because 11 U.S.C. § 1129(b)(2)(A)(i)(II) requires that holders of secured claims be paid at least the value of the property securing its claim through a confirmed plan. Without proving to this Court that she is doing so, the Debtor cannot have the Amended Plan confirmed because she must satisfy this Court that all requirements of 11 U.S.C. § 1129 have been met. *See* 11 U.S.C. § 1129(b)(1).

**D.     The Amended Plan Fails the Best Interest of Creditors Test**

Lastly, if the Debtor is able to cram down BNY Mellon's claim, the Amended Plan fails the Best Interest of Creditors Test because BNY Mellon would be receiving less under the Amended Plan that it would in a liquidation. Under 11 U.S.C. § 1129(a)(7) – otherwise known as the "Best Interest of Creditors" Test – "the court must compare what the [creditors] would receive upon liquidation to what it will receive under the plan. The proponent of the plan bears the burden of proof to show that this requirement is satisfied." *In re Am. HomePatient, Inc.*, 298 B.R. 152, 167 (Bankr. M.D. Tenn. 2003).

As the Amended Plan stands now (or should stand now), BNY Mellon has a secured claim for $160,000.00 and an unsecured claim for $87,744.70. The Debtor is proposing to pay just $6,000.00 to total to all unsecured creditors. However, Exhibit 2 attached to the Amended Disclosure Statement shows that the Debtor believes that there is $27,000.00 in equity in her

8

Case 3:16-bk-02034    Doc 88    Filed 06/21/17    Entered 06/21/17 12:11:14    Desc Main
Document      Page 8 of 10

primary residence. *See* [Doc. 83-2]. Subtracting the $5,000.00 homestead exemption provided for by Tenn. Code Ann. § 26-2-301(a), there is $22,000.00 available for unsecured creditors – nearly four times what the Debtor proposes to pay them. *See* [Doc. 23] at p. 12 (claiming homestead exemption). Thus, the Amended Plan clearly fails the Best Interest of Creditors Test, and confirmation must be denied.

## CONCLUSION

Based on the foregoing, BNY Mellon respectfully requests that this Court deny confirmation of the Amended Plan.

Respectfully submitted, this 21st day of June, 2017.

/s/ *Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)
**RUBIN LUBLIN TN, PLLC**
3145 Avalon Ridge Place, Suite 10
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com

*Attorney for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-HYB5, Mortgage Pass-Through Certificates, Series 2004-HYB5*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served via CM/ECF (registered users only) and U.S. Mail on this the 21st day of June, 2017, on the following parties:

Paul E. Jennings
Paul E. Jennings Law Offices, P.C.
805 South Church Street, Suite 3
Murfreesboro, TN 37130

Deborah F. Chantarumporn
702 Yorktown Court
Murfreesboro, TN 37129

Lloyd E. Mueller
Office of the United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203

Natalie M. Cox
Office of the United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)